# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| JOHN R. PINDER,<br><br>                        Petitioner,<br><br>v.<br><br>SCOTT CROWTHER,<br><br>                        Respondent. | **MEMORANDUM DECISION<br>& ORDER DENYING<br>HABEAS-CORPUS PETITION**<br><br>Case No. 2:16-CV-189-DN<br><br>District Judge David Nuffer |

In this federal habeas-corpus case, inmate John R. Pinder, attacks his state conviction. 28 U.S.C.S. § 2254 (2018). Having carefully considered all relevant documents and law, the Court concludes that three of Pinder's claims are procedurally defaulted. And, on the remaining claims, Pinder does not overcome the federal habeas standard of review. The Court therefore denies the petition with prejudice.

## BACKGROUND

A portion of the background is quoted from a Utah Supreme Court opinion:

> Pinder owned a sprawling ostrich ranch in Duchesne County. He and his ranch-hand, Filomeno Ruiz, were accused (and ultimately convicted) of murdering June Flood and Rex Tanner. Flood and Tanner also worked on Pinder's ranch.
>
> According to the evidence at trial, Ruiz staged a fight with his girlfriend, Mandy Harris, on the day of the alleged murder. The purpose of the staged fight was to get Harris away from the ranch. Ruiz called 911 during this staged altercation. Harris left after the police showed up. And the 911 call was recorded by the local dispatch.
>
> That evening, Pinder, his girlfriend Barbara DeHart, Ruiz, and Pinder's employees Joe Wallen and David Brunyer (along with Brunyer's wife) gathered around a campfire to drink. At some point the conversation turned to the "shrunken heads" that Pinder and

DeHart had seen at a curiosity shop in Seattle. Eventually Pinder spoke of his hopes to someday acquire one. Pinder said to Ruiz, "let's go get some heads." Ruiz responded with a question: "four or two?" Pinder replied, "two."

After grabbing a baseball bat, Pinder and Ruiz drove to the home where Flood and Tanner resided. Pinder violently assaulted Flood and Tanner, kidnapped them, and then shot them both with a 10 mm pistol. Pinder and Ruiz then left the murder scene and later returned with ammonium nitrate and dynamite, packed the bodies with the explosives, and set them off.

Pinder later got others to help him hide the remains. Following a day of bulldozing the blast site, Pinder and Ruiz dropped several black garbage bags of body parts into a barrel and set them ablaze. Pinder, DeHart, and Ruiz then met with the Brunyers for dinner, after which Pinder and Ruiz returned to the lake to collect more parts for burning.

Tuesday morning, at Pinder's behest, Ruiz and Brunyer went to the Flood home armed with a bottle of alcohol and some rags to remove fingerprints and tidy up. After returning, Brunyer complained about the smell of the Flood residence, to which Pinder quipped, "[T]hat's because [Tanner] shit his pants when I shot him." Pinder, Ruiz, and Brunyer then spent the day bulldozing and gathering more body parts for disposal. . . .

By Thursday, October 29th, Pinder and DeHart had left the state, eventually arriving in Cataldo, Idaho. . . .

Meanwhile, back at the ranch, an investigation was underway. One of Flood's friends reported her missing, and police officers searched the Flood residence. Police discovered the home in utter disarray, with blood on the bed sheets and the backrest of a chair in the living room. They also found a pair of excrement-stained pants in the bathroom. After leaving the home, the investigating officer saw and approached Brunyer, who was standing nearby. Brunyer appeared "[v]ery agitated, very nervous, [and] scared to death." . . .

Pinder and DeHart arrived back in Salt Lake on November 4th. On that day they decided to appear on KSL News for a television interview about the murders. Shortly thereafter, Pinder, Ruiz, and DeHart were all arrested. Investigators later searched Pinder's ranch and found a gruesome assortment of the victims' remains strewn about the area, stuck in bushes, and hanging from trees. They also searched Pinder's truck and found a 10 mm shell casing,

one of the victim's thumbprints on the inside of a window, and some bloodstains (one identified as Pinder's, the other unidentified). Police also determined that the rear windows had been wiped down and cleaned, as well as the mid-section of the door jam.

Ruiz pled guilty to two counts of murder. He denied being the shooter, accusing Pinder instead. DeHart was charged with and later convicted of obstruction of justice. *State v. DeHart*, 2001 UT App 12. And Pinder was charged with two counts of aggravated murder, two counts of aggravated kidnapping, two counts of tampering with evidence, one count of burglary of a dwelling, one count of possession of explosives, and two counts of desecration of a body.

While being held in the Summit County Jail before his preliminary hearing, Pinder met an inmate named Newly Welch. Pinder bragged to Welch about killing Tanner and Flood and blowing up their bodies. He told Welch that the day of the murders, he and Ruiz staged a fight with Ruiz's girlfriend to get her off of the ranch. Welch then asked Pinder what it was like to kill someone. And in response, Pinder put his hand on Welch's shoulder and said, "[T]here's no bigger rush[,] especially when you know you're going to get away with it." Pinder was convicted on all counts and sentenced to life with the possibility of parole on the aggravated murder charges, and to consecutive statutory terms on the other counts.

Pinder filed a motion for a new trial. For various reasons, the motion took two years to resolve. During the eventual evidentiary hearing on the new trial motion, Pinder presented several newly discovered witnesses--Joey Silva (an inmate who allegedly spent time with Ruiz), Robert Brunyer (David Brunyer's brother), and Kristy Barnes. Each of these witnesses testified, in one way or another, that Ruiz and David Brunyer were actually the killers. The district court found none of the new witnesses credible; indeed, the court expressly found each of them to be seriously lacking in trustworthiness and accordingly denied the motion. Pinder appealed, and we unanimously affirmed his conviction. *State v. Pinder*, 2005 UT 15.

Pinder filed this petition for post-conviction relief in 2006. He presented two main theories of relief. First, he claimed that newly discovered evidence would exonerate him. Pinder brought affidavits from two more inmates who had spent time with Ruiz while incarcerated: Beau Heaps and Danny Alvarez. The Alvarez

affidavit stated that while in the Duchesne County Jail, Ruiz told Alvarez that he and a "gavacho" committed the murders but that Pinder had "nothing to do with it." The Heaps affidavit stated that Heaps met Ruiz at the Utah State Prison and that Ruiz similarly told him that Ruiz and another man--not Pinder--were the murderers.

Pinder's second claim was based on the allegation that the State had violated his due process rights by knowingly presenting perjured testimony from Welch and by falsifying evidence concerning the 911 recording of the fight between Ruiz and Harris. To support his claims regarding Welch, Pinder provided an affidavit from a defense investigator who claimed that Welch admitted to lying on the stand but that he would not testify regarding his own perjury until "he was released from probation." With respect to the 911 tapes, Pinder submitted lengthy expert analyses of the 911 recordings of the Ruiz/Harris "fight." This analysis concluded that the 911 call recordings from the days of October the 24th and 25th were "not pristine," had in some way been "altered" and "tampered with by exporting and editing," and that these files could not "be deemed reliable." Based on these expert reports, Pinder concluded that: (1) the police had altered the recordings of the 911 call to make the Ruiz/Harris fight appear to have happened on Sunday the 25th rather than on Saturday the 24th; and (2) the State then used this fabricated date as a "baseline" in order to coax witnesses at trial to believe that all the events happened on Sunday rather than Saturday.

Discovery lasted three years, largely because of a drawn out battle over disqualification of the district court judge. During this time, both Ruiz and Alvarez were deposed. In 2009, at the close of discovery, the State moved for summary judgment on several grounds. The State first addressed the newly discovered evidence claims, arguing that they "could . . . have been discovered through the exercise of reasonable diligence," Utah Code Ann. § 78B-9-104(1)(e)(i) (2018), were merely cumulative of other evidence, were merely for impeachment, and in any event would not have changed the outcome of trial. Turning to the due process claims, the State first invoked the procedural bar limitations in the PCRA. *Id*. § 78B-9-106(1)(c). It argued that the due process claims "could have been but [were] not raised at trial or on appeal," or during Pinder's new trial motion. *Id.* Next, the State argued that Pinder failed to establish that the State "knew or had reason to believe Welch's testimony was false." Over a year later, Pinder filed a response, a motion to amend the petition, and a motion for additional discovery.

> The district court granted summary judgment [for] the State. It first
> held, with respect to new evidence, (1) Pinder failed to show that
> the Heaps and Alvarez testimony could not have been discovered
> by the exercise of reasonable diligence, (2) the evidence was
> merely cumulative and merely for impeachment, and (3) even if
> the evidence were considered, it did not establish that the newly
> discovered evidence would make it impossible for a reasonable
> jury to render a guilty verdict. Turning to the due process claims,
> the court dismissed them both as procedurally barred because they
> could have been brought "during Pinder's motion for a new trial or
> on appeal." The court also ruled on the merits of both the Welch
> claim and the 911 claim, holding that Pinder had failed to shoulder
> his burden of showing that the State knew or should have known
> that both the Welch testimony and the 911 tapes were false. The
> court never expressly addressed Pinder's motion for additional
> discovery. But it effectively denied the motion by granting the
> State's motion for summary judgment. As for the motion to amend,
> the court denied it in its order granting summary judgment, but
> without explaining its reasons for doing so.

*Pinder v. State,* 2015 UT 56, ¶¶ 4-19.

Pinder timely appealed, asserting two sets of claims for relief: (1) He presented newly discovered evidence of witnesses Alvarez and Heaps, apparently to show Pinder's innocence. *Id.* ¶ 2. (2) He asserted that the State violated his due-process rights by knowingly adducing at trial perjured testimony and fabricated evidence. *Id.* The supreme court rejected the first claim on the merits and the second set of claims as procedurally defaulted.

### PINDER'S ASSERTED GROUNDS FOR FEDERAL-HABEAS RELIEF

Pinder asserts several grounds for federal habeas relief:

(I) The State violated Pinder's due-process rights by (A) falsifying 911 recordings to show the murder occurred on October 25, not October 24, 1998; and (B) presenting Newly Welch's perjured false testimony.

(II) The State violated *Brady v Maryland*, 373 U.S. 83 (1963), by not disclosing exculpatory evidence regarding (A) main prosecution witness Ruiz; (B) Ruiz and

Brunyer's plea deals; and (C) patterns of police misconduct.

(III) Newly discovered evidence was not properly considered as to (A) Ruiz admissions (i.e., potential witnesses Alvarez, Heaps, and witness Silva); (B) Brunyer admissions (i.e., witnesses Barnes, Robert Brunyer, and potential witnesses, James and Leann Hill, and Moellmer).

(IV) Cumulative error.

## ANALYSIS

### I. PROCEDURAL DEFAULT BARS SOME GROUNDS FOR RELIEF

Grounds (I)(A) and (B) are procedurally defaulted.

"[I]f Petitioner failed to comply with a state procedural requirement for bringing . . . claim[s], there is a . . . bar to federal review, namely procedural default." *Parkhurst v. Shillinger*, 128 F.3d 1366, 1370 (10th Cir. 1997); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (holding, when federal claim defaulted in state court on independent and adequate state procedural basis, federal review of claim barred unless cause for default and actual prejudice shown). Because Pinder could have but did not raise his claims regarding the 911 recording and Welch's testimony "at trial or on appeal," *Pinder*, 2015 UT 56, ¶ 38 (quoting Utah Code Ann. § 78B-9-106(1)(c) (2018)), the Utah Supreme Court deemed those issues procedurally defaulted and declined to analyze them on their merits. *Id*.

Pinder argues that the procedural default in state court was not based on an independent and adequate state rule. "To be independent, the procedural ground must be based solely on state law." *Thacker v. Workman*, 678 F.3d 820, 835 (10th Cir. 2012). "To be adequate, the procedural ground 'must be strictly or regularly followed and applied evenhandedly to all similar claims.'" *Id.* (quoting *Sherrill v. Hargett*, 184 F.3d 1172, 1174 (10th Cir. 1999)).

In concluding that these two of Pinder's claims were procedurally defaulted, the Utah Supreme Court explicitly discussed and applied the provisions of Utah's Post-Conviction Remedies Act, Utah Code Ann. § 17B-9-101 through -405 (2018), and its strict limitations on post-conviction-relief petitions by inmates who could have raised their issues earlier but did not. *See id.* § 78B-9-106(1)(c) ("A person is not eligible for relief under this chapter upon any ground that . . . could have been but was not raised at trial or on appeal . . . ."); *Thacker*, 678 F.3d at 835. "Thus, there is simply no doubt that the [Utah Supreme Court's] ruling rested exclusively on [Utah] state law." *Thacker*, 678 F.3d at 835.

Pinder also contends that the state procedural ground upon which the Utah Supreme Court relied was inadequate because it was a "new" procedural ground and therefore could not have been regularly and evenly applied in the past. However, the procedural ground that the Utah Supreme Court relied upon was the time-tested and well-worn ground that an applicant for post-conviction relief is ineligible for relief upon any ground that was not raised at trial or on appeal. *Ross v. State*, 2012 UT 93, ¶ 25; *Johnson v. State*, 2011 UT 59, ¶¶ 6, 9; *Schwenke v. State*, 2012 UT App 18, ¶ 5; *Rynhart v. State*, 2011 UT App 6, ¶¶ 2-5; *Pedockie v. State*, No. 20100372-CA, 2010 Utah App. LEXIS 299, at *1 (Utah Ct. App. Oct. 28, 2010) (per curiam); *Underwood v. State*, 2010 UT App 129, ¶¶ 3-5 (per curiam); *Kissell v. State*, 2010 UT App 123, ¶¶ 2-3; *Zampedri v. State*, 2009 UT App 302, ¶ 4 (per curiam); *Meinhard v. Turley*, 2009 UT App 150, ¶ 3 (per curiam); *Fleming v. State*, 2008 UT App 407, ¶¶ 2-3 (per curiam). In fact, the Court could not find a case--and Pinder has not pointed toward any case--in which this ground has not been applied when relevant in the Utah appellate courts.

The part of the Utah Supreme Court's analysis that Pinder contends is "new" (and therefore not regularly and evenly applied in the past) is the idea that "raised at trial" includes a

post-trial motion in the trial court. But that was not even necessarily what the court was relying on in concluding the procedural bar applied. The court apparently believed that Pinder had enough information about these two claims to assert them during his actual trial. As to Welch's testimony, the court said, "[T]he defense had plenty of grounds for this assertion [that Welch perjured himself] at trial." *Pinder*, 2015 UT 56, ¶ 48. And when it said "at trial," in this context, it meant when Welch testified, not in the post-trial period before appeal. *See id*. Meanwhile, as to the assertedly doctored-911 tapes, the Court noted, "Pinder offers no clear ground for his assertion that this claim could not have been presented at trial . . . ." *Id*. ¶ 53. Again, "at trial" meant the time when the murder date was being discussed in trial proceedings, not in the post-trial period before appeal. *See id*. And the Court need not address the alleged newness of this adequate state procedural basis for default.

The procedural bar here hinged on an independent and adequate state ground.

### B. Actual-Innocence Exception

Pinder may overcome procedural default, but only by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. His arguments appear to hinge on "newly discovered evidence," so the exception Pinder relies on is essentially that of fundamental miscarriage of justice or actual innocence. Pinder's arguments under this heading re-argue for the most part every one of his claims in this petition--all having been rejected by the Utah Supreme Court. *Pinder*, 2015 UT 56; *State v. Pinder*, 2005 UT 15. Evidence of actual innocence proffered must meet all three criteria: (1) new, (2) reliable, and (3) so probative and compelling that no reasonable juror could find guilt. *See Schlup v. Delo*, 513 U.S. 298, 324-29 (1995). Requirement one is not met here. All the newly discovered evidence

Pinder raises is essentially every claim that he brought before the Utah Supreme Court and in this petition, re-argued as grounds for a finding of actual innocence here.

There is no new evidence. Petitioner's mere rehashing of evidence and alleged civil-rights violations do not show that the exception applies. Indeed, the kernel of the analysis of actual innocence is not whether Petitioner urgently believes errors existed--or whether error indeed existed--in state proceedings, but whether Petitioner is factually innocent. Actual innocence must also be supported by new evidence, which Petitioner has not provided.

The first two grounds in the petition--the prosecution's violation of Pinder's due-process rights through falsified 911 recordings and introduction of Welch's perjured, falsified testimony--are denied because of procedural default.

## II. MERITS ANALYSIS

Pinder argues that the prosecution violated his constitutional rights under *Brady* by not disclosing exculpatory evidence. He also contends that the Utah courts did not properly consider "new evidence" argued in his defense after his trial. These claims are denied on their merits.

### A. Standard of Review

The standard of review to be applied in federal habeas cases is found in § 2254, under which this habeas petition is filed. It states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.S. § 2254(d) (2018). Subsection (d)(1) governs claims of legal error while subsection (d)(2) governs claims of factual error." *House v Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

The inquiry includes whether Utah Supreme Court's rejection of Pinder's claims "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C.S. § 2254(d)(1) (2018). This "'highly deferential standard,'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted); *see Littlejohn v. Trammell*, 704 F.3d 817, 824 (10th Cir. 2013), is "'difficult to meet,' because [the statute's] purpose is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) (citation omitted)). This court is not to determine whether the Utah Supreme Court's decisions were correct or whether a different outcome might have been reached. *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). And, "[t]he petitioner carries the burden of proof." *Cullen*, 563 U.S. at 181.

Under *Carey v. Musladin*, 549 U.S. 70 (2006), the first step is determining whether clearly established federal law exists relevant to Pinder's claims. *House*, 527 F.3d at 1017-18; *see also Littlejohn*, 704 F.3d at 825. Only after answering that "threshold question" affirmatively does the issue arise " whether the state court decision is either contrary to or an unreasonable application of such law." *Id.* at 1018.

> [C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

10

*Id.* at 1016.

Further, "in ascertaining the contours of clearly established law, we must look to the '*holdings* as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Littlejohn*, 704 F.3d at 825 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (emphasis added) (citations omitted)). And, a court deciding a federal habeas claim is not restricted by the state court's analysis whendeciding whether relevant clearly established federal law exists. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("[F]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation omitted).

If that threshold is overcome, habeas relief may be granted only when the state court has "unreasonably applied the governing legal principle to the facts of the petitioner's case." *Walker v. Gibson*, 228 F.3d 1217, 1225 (10th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). This deferential standard does not let a federal court issue a writ of habeas corpus merely because it determines on its own that the state-court decision erroneously applied clearly established federal law. *See id.* "'Rather that application must also be unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 411). Indeed, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington*, 562 U.S. at 100 (emphasis in original) (quoting *Williams*, 529 U.S. at 410).

This highly demanding standard means to pose a sizable obstacle to habeas petitioners. *Id.* at 786. Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.* It maintains power to issue the writ when *no*

*possibility exists* that "fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents. It goes no farther." *Id.* To prevail in federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87. It is against this backdrop that the standard of review will be applied to this case's circumstances.

### B. *Brady* Violations

Pinder's arguments about the prosecution's alleged failure to disclose exculpatory evidence to his defense are based on: (1) Ruiz's involvement in the "Skidmore murder," drug dealing, and "Mexican Mafia"; (2) Ruiz and Brunyer's[1] plea-deal terms; and (3) extensive police misconduct in Uintah Basin. Pinder's arguments are fatally flawed by their cursory nature and failure to analyze issues under the federal habeas standard of review. Beneath each heading to the three categories of "exculpatory evidence," Pinder merely states, "The state court's denial of this claim was contrary to and an unreasonable application of clearly established federal law, 28 U.SC. § 2254(d)(1), and an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2)." (Pet., Doc. No. 1, at 41, 44, 47.) Most damaging to his cause, Pinder's arguments do not refer to any caselaw at all, let alone the controlling case, *Brady*. For each issue, Pinder merely lists evidence with his spin on it. This does not even begin to meet his burden to show that the Utah Supreme Court applied the wrong United States Supreme Court precedent and/or unreasonably applied that precedent.

Remembering that review is tightly restricted by the federal habeas standard of review, this Court observes that Utah Supreme Court selected the correct governing legal principle with which to analyze these alleged evidentiary suppression issues: *Brady,* 373 U.S. 83 and its

---

[1] Addressed later in footnote three.

progeny. *Pinder*, 2005 UT 15, ¶ 22. Unlike Pinder, the supreme court took care to set forth *Brady*'s requirements in several paragraphs:

> In *Brady*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. The Supreme Court later expanded this principle by placing a duty on the prosecution to disclose material evidence favorable to a defendant even in the absence of a request by the accused. *United States v. Agurs*, 427 U.S. 97, 107 (1976). The duty to disclose applies to substantive as well as impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985).
>
> When claiming that the prosecution's failure to disclose evidence requires a new trial, the Supreme Court has stated that a defendant must show the following: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Consistent with this standard, we have declared that a *Brady* violation "occurs only where the state suppresses information that (1) remains unknown to the defense both before and throughout trial and (2) is material and exculpatory, meaning its disclosure would have created a 'reasonable probability' that 'the result of the proceeding would have been different.'" *State v. Bisner*, 2001 UT 99, ¶ 33 (quoting *Bagley*, 473 U.S. at 682).
>
> Explaining the *Brady* inquiry announced in *Bisner*, we noted that "courts universally refuse to overturn convictions where the evidence at issue is known to the defense prior to or during trial, where the defendant reasonably should have known of the evidence, or where the defense had the opportunity to use the evidence to its advantage during trial but failed to do so." *Id.*; *see also United States v. Aichele,* 941 F.2d 761, 764 (9th Cir. 1991) ("When . . . a defendant has enough information to be able to ascertain the supposed [*Brady*] material on his own, there is no suppression by the government."); *United States v. Pandozzi*, 878 F.2d 1526, 1529 (1st Cir. 1989) (concluding that *Brady* is not violated when the defense could have obtained the information "with any reasonable diligence" (internal quotation omitted)); *United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir. 1986)

> (the *Brady* "rule does not apply if the evidence in question is available to the defendant from other sources").
> Further, as the second component of the *Bisner* test makes clear, the evidence in question must be material, such that a different result on retrial is reasonably probable. 2001 UT 99 at ¶ 33. It is important to note, however, that the *Brady* materiality standard is not identical to a sufficiency of evidence review. *See Kyles v. Whitley,* 514 U.S. 419, 434 (1995) (explaining that the *Brady* materiality analysis "is not a sufficiency of evidence test"). Rather, a reviewing court must look at the suppressed evidence and determine whether, taken cumulatively, the absence of the suppressed evidence at trial undermines confidence in the fairness of the proceeding. *See id.* at 434-35. As a result, "the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id. at 434.

*Id*. ¶¶ 23-26. The Court's review of *Brady* and its progeny reveals that the Utah Supreme Court accurately set forth the law here.

As required by the standard of review--which Pinder ignored by providing no analysis--this opinion has thoroughly evaluated whether Utah Supreme Court reasonably applied *Brady* as to Ruiz's involvement in the Skidmore murder, *id*. ¶¶ 28-33; Ruiz's plea negotiations, *id*. ¶¶ 38-42; and police corruption in the Uintah Basin, *id*. ¶¶ 34-37. Within several paragraphs under each heading, the Utah Supreme Court set forth *Brady*'s requirements and carefully applied them to the type of evidence allegedly not disclosed. The Utah Supreme Court reasonably applied *Brady*, particularly lacking any substantive argument by Pinder to the contrary. Pinder has utterly failed to meet his burden under the federal standard of review here.

### C. "New Evidence"

Pinder contends that specific testimony should have been--but was not--accepted as new evidence warranting a new trial, including testimony offered by Silva, Robert Brunyer, Moellmer, Barnes, and the Hills (assessed on direct appeal) and Alvarez and Heaps (assessed on

14

appeal from post-conviction application). *Pinder*, 2015 UT 56, ¶¶ 25-36; *Pinder*, 2005 UT 15, ¶¶ 64-90. He attacks the Utah Supreme Court's rejection of this "new evidence" as

> a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.S. § 2254(d) (2018). But Pinder gives mere lip service to the federal habeas standard of review, stating it but providing no analysis using it.

First, the state *Pinder* opinions did not analyze the new-evidence issues under the Federal Constitution, but under state-law standards. It is well-settled that a federal court may grant habeas relief only for violations of the Constitution or laws of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). Errors of state law are not a basis for relief. *Estelle*, 502 U.S. at 67; *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Petitioner thus has no valid argument here.

Second, to the degree that Pinder challenges the state courts' factual findings, he overlooks the controlling statute's further guidance as to state-court factual findings:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.S. § 2254(e)(1) (2018).

Under the statute, the the correctness of all state-court factual findings about purportedly new evidence is presumed. This includes state court findings that the Hills' offered testimony "was available or known to Pinder before the conclusion of trial," *Pinder*, 2005 UT 15, ¶ 72; Moellmer's offered testimony could have been uncovered by trial's end by "a reasonably diligent

search," *id*. ¶ 740; as witnesses, Robert Brunyer's and Barnes's "credibility was highly suspect and not entitled to any significant weight" that could have had "a strong enough impact on a jury to make a different result on retrial probable," *id*. ¶ 78; "'it is difficult to conceive of a less trustworthy witness' than Silva," *id*. ¶ 86; and, while the Heaps-and-Alvarez-offered testimony "adds something to Pinder's theory that Ruiz was the one who shot Flood and Tanner, a reasonable jury would still be well within its prerogative to convict Pinder based on the evidence it had before it" and thus it did not trigger a new trial,[2] *Pinder*, 2015 UT 56, ¶ 36. Pinder's mere repetition of all his past arguments does not meet the "clear and convincing evidence" threshhold the standard of review requires. "In light of the record as a whole, [the Court] conclude[s] that [Pinder's] argument on this point doesn't entitle him to relief under § 2254(d)(2)'s 'daunting standard.'" *Vreeland v. Zupan*, 906 F.3d 866, 881 (10th Cir. 2018) (citations omitted).

### D. Cumulative Error

"In the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Cole v. Trammell*, 755 F.3d 1142, 1177 (10th Cir. 2014) (quoting *Alverson v. Workman*, 595 F.3d 1142, 1162 (10th Cir. 2010)). "The cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Smith*, 824 F.3d at 1255 (quoting *United States v. Franklin-El*, 555 F.3d 1115, 1128 (10th Cir. 2009)). There are not errors here, so the cumulative-error doctrine does not apply.

---

[2] This last "finding" could be termed a legal conclusion; however, as a legal conclusion it would fall under the category of a state-law determination that this Court will not review. *See Estelle*, 502 U.S. at 67

## CONCLUSION

Pinder's claims are either procedurally defaulted[3] or do not pass muster under the federal habeas standard of review.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus is DENIED and the action DISMISSED WITH PREJUDICE.

IT IS ALSO ORDERED that a certificate of appealability is DENIED.

This action is CLOSED.

DATED this 6th of March, 2019.

BY THE COURT

_____
JUDGE DAVID NUFFER
United States District Court

---

[3] Procedural default also applies to Pinder's argument that information about Brunyer's potential plea deal was suppressed à la *Brady*. *See Pinder*, 2015 UT 56, ¶ 61.